José Fernández Rodríguez, Plaintiff and Appellant, *v.* Alonso Riera & Co., Inc., et al., Defendants and Appellees.

No. 4569. Argued March 18, 1930.—Decided July 15, 1930.

*Adrián Agosto* for appellant. *Feliú & La Costa* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is an intervention proceeding. Alonso Riera & Co., Inc., in an action brought against Policarpio Marrero, attached certain houses situated in the town of El Dorado as belonging to the defendant, and a judgment having been rendered therein in favor of the plaintiff a public sale of the houses was advertised to take place on September 7, 1925. On the 2nd of the same month José Fernández instituted the present proceeding and claimed the ownership of the houses by purchase from the said Policarpio Marrero in a conveyance executed on May 19, 1920, and of the lots, on which the houses stand, by purchase from the Municipality of El Dorado in a deed dated October 11, 1921.

The defendant in intervention, Alonso·Riera & Co., Inc., answered and denied that the intervener was the owner of the houses inasmuch as Marrero had "transferred" (*traspasado*) but not "sold" them to the complainant, and pleaded as "special defenses" that the transfer was void, that the intervener had caused the defendant damages in the sum of two hundred dollars, that the injunction issued against the execution sale should be dissolved, and that the intervener should be adjudged to pay the costs. There was no prayer for affirmative relief in the answer. Apparently the so-called "special defenses" were intended to take the place of such a prayer.

The case went to trial. Both parties introduced their evidence and the court finally rendered a judgment in favor of defendant as regards the houses. The lots were held to have been lawfully acquired.

Thereupon the intervener took this appeal and assigned in his brief four errors, which he claims were committed by

the court: (1) In holding as valid the attachment levied; (2) in differentiating in its decision between the houses and the lots; and (3 and 4) in weighing the evidence.

We need not dwell upon the first two errors assigned, as the others, relating to the evidence, were committed and justify a reversal of the judgment.

In support of its judgment the district court found that the sale from Marrero to Fernández was simulated and that the real owner of the houses had been and continued to be Marrero, instead of Fernández.

In its statement of the case and opinion that court summarized the evidence heard, and then said:

"The first contradiction in the evidence of the plaintiff is that José Fernández Rodríguez tells us that he paid the purchase price of the two houses at the time that the deed was signed, that he did so in cash and in several amounts. This is controverted by the deed itself and by the testimony of Policarpio Marrero. (Followed by citations.)

"It also appears that this transaction took place at a time when Policarpio Marrero had knowledge that certain claims of the Riera firm were to be enforced. (Followed by citations.)

"It further appears that this sale was a transfer of all the properties of Policarpio Marrero and that he made such a transfer in payment of a debt allegedly owed by him to Fernández. (Followed by citations.)

"The evidence herein does not show clearly the relationship existing between José Fernández Rodríguez and Policarpio Marrero by virtue of which the latter was indebted to the former in the sum of $6,500. Fernández testified that the indebtedness had not been contracted with the firm but individually, and Marrero testified his debts to Fernández arose principally from business transactions and then, in rebuttal, he stated in addition that those were obligations contracted with Fernández without any receipts being signed, and that when in need of money he applied to Fernández or elsewhere and on several occasions had received amounts ranging from four to five hundred dollars in that way, although he did not explain the reason for such loans. All this seems to us uncertain and, even granting full effect to such evidence, it was not shown

in any way how much those sums totalled or what was the specific reason for so loaning them. (Followed by citations.)

We desire to state further that José Fernández is a member of a mercantile partnership engaged in the business of selling groceries, and we fail to see what transactions involving the sum of $6,500 could there be between Fernández and Policarpio Marrero, since the latter's business was different from that of the said partnership and it does not appear that the said sums were obtained from the firm but individually from one of its partners, who was neither a banker nor was engaged in the business of loaning money. (Followed by citations.)

"It also appears that Policarpio Marrero has retained the possession of said properties and that, according to the testimony of José Fernández, he is employed by the latter to manage them. (Followed by citations.)

"It further appears that Policarpio Marrero has paid the taxes on those properties, and this fact is considered as another badge of fraud. (Followed by citations.)

"All these are presumptions arising from the above facts which, of course, could have been controverted by proper evidence as stated in the aforesaid treatise. (Followed by citations.)

"I wish also to call attention to the following:

"It is said in the cited treatise that, where numerous signs or badges of fraud exist, it is incumbent on the party seeking to uphold the transfer to meet and overcome them. In my opinion this has not been done in the present case, nor has the plaintiff's claim been definitely established. On the contrary, there are numerous circumstances clearly showing the fraudulent intent involved in the transfer.

"It appears from the evidence that José Fernández bought the lots, on which the said houses stand, in the Municipality of El Dorado, and it was so admitted by the defendants. But as the manner in which the houses were acquired has been shown, it is my opinion that the mere acquisition of the lots subsequently by the plaintiff does not validate the former transaction, nor is it sufficient in itself for disregarding all the evidence introduced as to such transaction.''

It may be that the conclusion reached by the district court is correct; perhaps our intervention is contrary to absolute justice, but after considering the pleadings and the evidence

we are constrained to reverse the judgment appealed from and to substitute it by another in favor of the plaintiff.

The plaintiff testified as the only witness in his behalf. He did so having before him the deed executed on May 19, 1920, whereby Marrero sold the houses to him. We copy from the record:

"The purchase price of the six properties above described was $6,500, which the Marrero-Hernández spouses stated and confessed to have received from the purchaser prior to the execution of the sale and to their entire satisfaction, and they accordingly granted full release therefor in the said deed of sale."

The deed was presented in the registry of property, but the record thereof was refused on August 15, 1921, for the reason that the properties did not appear recorded in the name of the vendor.

The intervener further testified and referred to another deed executed on October 11, 1921 in which he appeared as purchasing the said lots from the Municipality of El Dorado. It is stated in that deed, which was recorded in the registry of property, that the lots are sold to Fernández because he is the owner of the houses built thereon and therefore the usufructuary of the lots.

By reason of certain questions put to the intervener, his counsel introduced in evidence the record of the suit brought by Alonso Riera & Co., Inc., against Marrero, in which the houses were attached to secure the effectiveness of any judgment that might be rendered. It appears from the said record that the attachment was levied in December 1922, and that in the complaint, filed on December 19, 1922, the sum of $1,772.70 is sought to be recovered from Marrero for goods purchased by the defendant from the plaintiff since December 1921.

The appellee invokes article 40 of the Mortgage Law which, in so far as now pertinent, reads thus:

"Art. 40.—The following may be revoked, in accordance with

the provisions of the foregoing article, if the circumstances therein mentioned are present:

"1. . . . . . .

"5. Any contract by which the debtor expressly or tacitly conveys or renounces a property right.

"It shall be understood that no price or its equivalent figures in such contracts when the notary does not certify to its payment was made prior to the execution of the contract, and this fact is not established, or it is shown that it comes within the provisions of the third subdivision of this article."

The preceding article 39 reads as follows:

"Art. 39.—By a conveyance under a gratuitous title to defraud creditors, in the first case of subdivision 2 of article 37, shall be understood not only one made by donation or assignment of the interest, but also any alienation, creation, or renunciation of a property right by the debtor within the periods mentioned in the common laws and in the laws of commerce, for the revocation of conveyances made to defraud creditors, provided there was no price, or its equivalent, or any preexisting past-due obligation."

The foregoing provisions are not applicable in the present case. At the time of the sale from Marrero to the intervener, the complaint had not been filed nor the current account, in which it originated, had been opened. The sale took place in 1920, the account was opened in December 1921, and the complaint was filed in December 1922. How could it be asserted that the sale was made in fraud of creditor Alonso Riera & Co., Inc.?

We think that the intervener, by his testimony and the deeds on which he relied, made out a strong prima facie case as to his ownership of the attached houses, and that, inasmuch as Alonso Riera & Co., Inc., to whom the burden of the evidence shifted from that moment, failed to show that he was a creditor at the time of the sale, it had no cause of action to set aside the sale as being in fraud creditors.

Appellees' brief is a very able one. In it the appellees skillfully avoid adverse points, but realizing the importance

of the question above alluded to it asserts that "at the time of the sale from Marrero, the latter owed money to this appellee." But in support of that claim it only invokes the following statement taken from the testimony of Marrero:

"That at the time he sold the houses to don Pepe Fernández (the appellant) he had business with Alonso Riera (the appellee herein) to whom he owes some money; he does not remember the amount; that he had a current account with him."

That statement, even if considered by itself, has not the scope claimed by the appellee. Marrero said that he owed money. He thereby referred to the time when he was testifying, in 1926. The fact that he had business with Alonso Riera & Co., Inc., at the time he sold the houses does not necessarily mean that Alonso Riera was then his creditor. On the other hand, if the statement is examined in the light of the allegations set out in the complaint filed by Alonso Riera & Co., Inc., it will be seen that the current account sought to be recovered was opened more than 18 months after the sale of the houses.

Therefore, the whole structure which the defendant endeavored to erect, and which the trial court considered as having been erected, must fall to the ground.

The foregoing is sufficient to justify a reversal of the judgment; but we wish to add that the appellant has met each and every one of the findings made by the trial judge as regards the existence of signs of fraud, by referring to what the record really shows, at times overcoming the attacked conclusion, and, at others, explaining the particular situation in a satisfactory manner. We will not enter here into a consideration of the appellant's arguments, as it would unnecessarily lengthen this opinion. Had Alonso Riera & Co., Inc., been a creditor entitled to attack the sale as being in fraud of creditors and shown besides that it had been compelled to do so for lack of any other legal remedy against the direct debtor, to obtain reparation for the injury sus-

tained (section 1261 of the Civil Code), the evidence intro-duced would not have been sufficient to warrant the conclusion that fraud had actually been committed.

The judgment appealed from must be reversed and another rendered instead in favor of the plaintiff, without special imposition of costs.

Mr. Justice Texidor took no part in the decision of this case.